UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| **LEXINGTON INSURANCE CO** | **CASE NO. 6:20-CV-00669** |
| **VERSUS** | **JUDGE ROBERT R. SUMMERHAYS** |
| **JASON L CORMIER ET AL** | **MAGISTRATE JUDGE CAROL B. WHITEHURST** |

**MEMORANDUM RULING**

Presently before the Court are the (1) Motion for Summary Judgment [ECF No. 37] filed by defendants Jason L. Cormier, M.D. and Jason L. Cormier, M.D., APMC; and (2) Plaintiff Lexington Insurance Company's ("Lexington") Motion for Partial Summary Judgment [ECF No. 39]. Each motion is opposed.

## I.
### BACKGROUND

This case arises out of Lexington's decision not to renew a professional liability policy issued to Jason L. Cormier, M.D. and Jason L. Cormier, M.D., APMC (collectively "Defendants"). Lexington alleges that Defendants intentionally misrepresented Dr. Cormier's malpractice claims history in the initial application for the insurance policy in order to deceive Lexington into providing coverage.[1] Defendants deny those allegations and filed a Counter-claim for breach of contract, bad faith, and damages.[2]

Dr. Cormier is a board-certified neurosurgeon.[3] When he first started practicing medicine in Lafayette, Dr. Cormier established a professional relationship with a company called Probill of Lafayette, Inc. ("Probill") to help him with the "business side" of his medical practice.[4] Cynthia

---
[1] ECF No. 1.
[2] ECF No. 8.
[3] ECF No. 37-19, ¶ 1.
[4] ECF No. 37, Exhibit B.

1

Fernandez ("Ms. Fernandez") and others at Probill worked with Dr. Cormier to form his business entities, open bank accounts, secure hospital credentials, set up medical billing procedures, hire and train employees, manage his payroll and, most important to this motion, procure professional liability insurance coverage.[5] In 2010, Ms. Fernandez assisted Defendants in obtaining professional liability coverage through Practice Protection Fund ("PPF").[6] Ms. Fernandez, with the help of a licensed insurance agent Jon Andonie ("Mr. Andonie"), renewed coverage through PPF for Defendants each year.[7] In the spring of 2018, Mr. Andonie learned that PPF was insolvent, and he was approached by the insurance agency that wrote Lexington policies, Louisiana Premier Physicians Program ("LP3"), to bring over medical providers from PPF to Lexington.[8] Mr. Andonie and Ms. Fernandez initiated Defendants' application process for coverage through Lexington by completing an initial short form application. Mr. Andonie pre-filled the short form application[9] and the application was signed by Ms. Fernandez.[10] Numerous questions on the short form application were left blank, including:

> Do you or any entity to be insured have active claims awaiting Medical Review Panels? _____ How many? _____ How many claims have been completed by Medical Review Panels? _____ Did any result in adverse decisions or settlements? _____ How many claims are awaiting trial? _____ Completed trial? _____ Any judgments or settlements paid on your behalf? _____

Despite the omissions, LP3 decided to continue the application process and request a long form application.[11] On July 19, 2018, Dr. Cormier submitted his completed long form application for professional liability insurance to LP3.[12] In the application, the box for "No" was checked for each of the following questions:

---

[5] ECF No. 37, Exhibit C.
[6] ECF No. 37-19, ¶ 4.
[7] Id.
[8] ECF No. 37-19, ¶ 5.
[9] ECF No. 37, Exhibit I, Andonie Pre-Typed Short Form Application.
[10] ECF No. 37, Exhibit L, Short Form Application.
[11] ECF No. 39, Exhibit H.
[12] ECF No. 37, Exhibit K.

2

"Have you or any entity to be insured EVER had a claim/suit go beyond Medical Review Panel Proceeding?"

"Do you or any entity to be insured CURRENTLY have a Medical Review Panel Proceeding pending or have knowledge of an impending complaint?"

"Has any petition, claim or suit for alleged malpractice ever been brought against you?"[13]

Each of these answers was inaccurate as Dr. Cormier had eleven malpractice claims asserted against him according to the summary judgment record. Specifically, Dr. Cormier's claims history included (1) five medical review panels that were pending at that time; (2) four medical review panels that had previously been completed, two of which were completed during the time that he was attempting to obtain coverage from Lexington (one on May 31, 2018 and one on June 28, 2018); (3) two prior medical review panel complaints that had been dismissed without reaching an opinion; and (4) two malpractice lawsuits, one of which was a post-panel lawsuit.[14]

Mr. Andonie testified that he pre-filled the long form application and checked the "No" box for each of the above questions and sent the application to Ms. Fernandez for review.[15] Ms. Fernandez testified that she did not review the questions that had been completed by Mr. Andonie because she assumed he had answered the questions accurately.[16] Ms. Fernandez completed some additional information and presented the application for Dr. Cormier to sign. Dr. Cormier signed the application without reading the document.[17]

After a number of claims were made against Dr. Cormier in the months following issuance of the Lexington policy, Lexington investigated the prior claims and thereafter sought to rescind the policy based upon the misrepresentations contained in the application.

---

[13] *Id.*
[14] ECF No. 39, Exhibit I.
[15] ECF No. 37, Exhibit A.
[16] ECF No. 37, Exhibit B.
[17] *Id.*

## II.
## LAW AND ANALYSIS

### A. Summary Judgment Standard.

"A party may move for summary judgment, identifying each claim or defense–or the part of each claim or defense–on which summary judgment is sought."[18] "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[19] "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-moving party."[20] As summarized by the Fifth Circuit:

> When seeking summary judgment, the movant bears the initial responsibility of demonstrating the absence of an issue of material fact with respect to those issues on which the movant bears the burden of proof at trial. However, where the nonmovant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial.[21]

When reviewing evidence in connection with a motion for summary judgment, "the court must disregard all evidence favorable to the moving party that the jury is not required to believe, and should give credence to the evidence favoring the nonmoving party as well as that evidence supporting the moving party that is uncontradicted and unimpeached."[22] "Credibility determinations are not part of the summary judgment analysis."[23] Rule 56 "mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the

---

[18] Fed. R. Civ. P. 56(a).
[19] *Id.*
[20] *Quality Infusion Care, Inc. v. Health Care Service Corp.*, 628 F.3d 725, 728 (5th Cir. 2010).
[21] *Lindsey v. Sears Roebuck and Co.*, 16 F.3d 616, 618 (5th Cir.1994) (internal citations omitted).
[22] *Roberts v. Cardinal Servs.*, 266 F.3d 368, 373 (5th Cir.2001); *see also Feist v. Louisiana, Dept. of Justice, Office of the Atty. Gen.*, 730 F.3d 450, 452 (5th Cir. 2013) (court must view all facts and evidence in the light most favorable to the non-moving party).
[23] *Quorum Health Resources, L.L.C. v. Maverick County Hosp. Dist.*, 308 F.3d 451, 458 (5th Cir. 2002).

existence of an element essential to that party's case, and on which that party will bear the burden of proof."[24]

B.  **Application of Louisiana Law.**

In a diversity case such as this one, the Court applies state substantive law. *Moore v. State Farm Fire & Cas. Co.,* 556 F.3d 264, 269 (5th Cir. 2009); *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). The parties do not dispute that Louisiana law applies to this case.

C.  **Voiding an Insurance Contract.**

Under Louisiana law,

> Except as provided in Subsection B of this Section, R.S. 22:1314, and 1315, no oral or written misrepresentation or warranty made in the negotiation of an insurance contract, by the insured or in his behalf, shall be deemed material or defeat or void the contract or prevent it attaching, unless the misrepresentation or warranty is made with the intent to deceive.[25]

Accordingly, an insurer can void the contract and avoid coverage when (1) the insured made a false statement in his insurance application; (2) the false statement was material; and (3) the insured's false statement was made with an "intent to deceive" the insurer.[26] In accordance with the law, the Lexington master policy provides in Section VI.H.2. for certificates of insurance in effect 60 days or more: "Fraud or misrepresentation. We can cancel if it is discovered that in obtaining this policy, or presenting a claim under this policy, an Insured has committed fraud or made a material misrepresentation with intent to deceive."[27]

Defendants seek summary judgment on the grounds that Lexington cannot establish the third element required to void their policy, namely that Defendants acted with an intent to deceive. They also move for summary judgment on their counter-claim that Lexington breached the

---

[24] *Patrick v. Ridge*, 394 F.3d 311, 315 (5th Cir. 2004) (alterations in original) (quoting *Celotex v. Catlett*, 477 U.S. 317, 322 (1986)).
[25] La. R.S. § 22:860 (A).
[26] *Smith v. Liberty Life Ins. Co.,* 2012 WL 6162757, at *2 (E.D. La. Dec. 11, 2012) (citing *State Farm Mut. Auto. Ins. Co. v. Bridges,* 36 So.3d 1142, 1146 (La. Ct. App. 2d Cir. 2010)).
[27] ECF No. 39, Exhibit G, p. 28.

5

contract by failing to provide sufficient notice of cancellation. Lexington, in turn, seeks summary judgment on its claims and argues that it is entitled to prevail as a matter of law. Defendants argue that Lexington cannot prove that Defendants acted with intent to deceive because the evidence in the record establishes that Dr. Cormier did not complete the application for insurance, nor did he read the application before signing it.

Under Louisiana law, "only a finding of intent to deceive will defeat coverage."[28] The insured's intent to deceive is "determined from circumstances indicating the insured's knowledge of the falsity of the representations made in the application and his recognition of the materiality of his misrepresentations, or from circumstances which create a reasonable assumption that the insured recognized the materiality."[29] Although the requirement of intent makes it more difficult for a defendant to prevail, the case must be evaluated like any other and "the allegation of intent does not spontaneously shield a case from summary judgment."[30] Lexington argues that the *Matt* case is dispositive here.[31] In *Matt*, the insurer refused to pay out under a life insurance policy after the insured committed suicide, claiming that the insured made material misrepresentations of fact as to his prior medical history. Discovery showed that the insured checked "yes" on his medical questionnaire regarding prior mental health treatment but only disclosed his diagnosis for ADHD.[32] The insured did not disclose that he had actually been treated for mental health disorders by numerous physicians over the course of several years, including treatment addressing an attempted suicide.[33] The court in *Matt* analyzed the issue of intent as follows:

---

[28] *Cousin v. Page*, 372 So.2d 1231, 1233 (La. 1979), citing *DiGerolamo v. Liberty Mutual Ins. Co.*, 364 So.2d 939 (La. 1978).
[29] *Abshire v. Desmoreaux*, 970 So.2d 1188, 1195 (La. App. 3d Cir. 11/7/07), writ denied, 978 So.2d 326 (La. 4/4/08).
[30] *Matt v. Northwestern Mutual Life Ins. Co.*, 580 F.Supp.3d 375 (W.D. La. 2022), citing *Trahan v. Transam. Life Ins. Co.*, 2020 WL 3196725, at *11 (M.D. La. Jun. 15, 2020) (quoting *Guillory v. Domtar Indus., Inc.*, 95 F.3d 1320, 1326 (5th Cir. 1996)).
[31] *Id. Matt* was decided by another judge in the Western District of Louisiana.
[32] *Id.*
[33] *Id.*, at pp. 378-380.

6

> In this matter the decedent obscured a significant and recent mental health history—one that any reasonable person knows would cause him to face difficulties obtaining life insurance. He did this by failing to disclose prior hospitalizations, diagnoses, medications, and treatment providers even though the MHQ clearly called for such information. He also answered falsely about his tobacco usage. He gave these responses knowing that Northwestern would use them to determine if and at what rate he could obtain life insurance. The loss of benefits to the decedent's children is unfortunate, particularly after the tragedy they have already suffered. However, the decedent obtained his coverage based on material false statements about his health history that could only have been made with the intent of deceiving Northwestern.[34]

Lexington argues that the facts of the present case require the same conclusion—namely that any reasonable person would have known that the inaccurate answers would impact his or her ability to obtain liability insurance and thus, the statements could have only been made with the intent to deceive. While the Court agrees that intent could be inferred from the totality of the circumstances, *Matt* is distinguishable. In *Matt*, there was no dispute that the decedent had personally completed the application containing false representations and omissions about the decedent's medical history. The evidence currently in the record in this case suggests that Dr. Cormier neither completed the claims history on the application form nor did he read those answers before he signed the document. Based upon the evidence submitted by the parties, the Court concurs that there are genuine issues of material fact as to whether Defendants had the intent to deceive Lexington when he completed the application for insurance. Accordingly, both motions for summary judgment regarding Lexington's claims must be DENIED.

D.   **Defendants' Counterclaims.**

Defendants argue that Lexington failed to give proper notice of the cancellation of the policy and therefore violated the insurance contract. Under the Lexington contract, if Lexington cancelled the policy based upon misrepresentation, it was required to give thirty days' notice of

---

[34] *Id.*, at p. 382.

cancellation.[35] However, if Lexington simply decided not to renew the contract, it was required to give sixty days' notice.[36] In the present case, Lexington mailed a letter on April 15, 2020 notifying Defendants of its decision not to renew the policy effective on May 31, 2020. If Lexington meets its burden at trial of voiding the policy based upon misrepresentation, the notice given would be sufficient under the policy. If, however, the only ground for terminating the policy was non-renewal, the notice was insufficient. As the Court has found that there is a genuine issue of material fact regarding whether Lexington has established grounds for voiding the contract, this issue regarding sufficiency of notice cannot be determined at this time.

## III.
### CONCLUSION

Based upon the foregoing reasons, the Court finds that genuine issues of material exist which preclude summary judgment. Accordingly, the (1) Motion for Summary Judgment [ECF No. 37] filed by Jason L. Cormier, M.D. and Jason L. Cormier, M.D., APMC; and (2) Lexington Insurance Company's Motion for Partial Summary Judgment [ECF No. 39] are both DENIED.

THUS DONE in Chambers on this 9th day of January, 2023.

ROBERT R. SUMMERHAYS
UNITED STATES DISTRICT JUDGE

---

[35] ECF No. 37, Exhibit R.
[36] *Id.*